[No. 10728.  Department One.  March 3, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. HERBERT L.
HANLON, *Appellant*.[1]

BURGLARY—EVIDENCE—SUFFICIENCY.  The evidence is sufficient to
sustain a conviction of burglary, notwithstanding a confession of
the accused's younger brother that he alone was the guilty party,
where it appears that the accused occupied adjoining rooms and
had the opportunity, the stolen goods were found in apartments oc-
cupied by himself and brother, he made no denial of guilt at the
time of his arrest, and had knowledge of the presence of the stolen
goods for about a week before his arrest, and made no disclosure
thereof.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered March 30, 1912, upon a trial
and conviction of burglary.  Affirmed.

*Will H. Thompson*, for appellant.

*John F. Murphy, Hugh M. Caldwell*, and *H. B. Butler*, for
respondent.

PARKER, J.—The defendant was convicted of the crime of
grand larceny, in the superior court for King county, and
sentenced to imprisonment in the state reformatory; from
which conviction and sentence he has appealed to this court.

The only contention here made by appellant's counsel is
that the evidence was not sufficient to justify the verdict of
the jury.  This question was first raised in the trial court
by motion for a new trial, there being no motion for nonsuit
or directed verdict upon the trial.  The evidence introduced
upon the trial was, in many particulars, in serious conflict.
However, a painstaking reading of the entire record con-
vinces us that there was competent evidence produced before
the jury warranting them in believing the following facts to
be established.

[1]Reported in 130 Pac. 339.

It is conceded that the goods in question were stolen by some person or persons on or about Sunday, January 28, 1912, from a room in a Seattle business block occupied by the owners of the goods, Mr. and Mrs. Douglas. The goods stolen were furs and some small articles belonging to Mrs. Douglas, and a dress suit, two white vests, and an overcoat of Mr. Douglas. At that time and for some time previous ·thereto, appellant had been engaged in newspaper work, and by permission of a tenant of an adjoining room, used his room occasionally during evenings and on Sundays. Appellant did typewriting and mimeograph work there at those times, in making out his reports to the various newspapers to which he was furnishing material for publication. He did not have a key of his own to the room, but would get the key ·from time to time from the tenant occupying it, as occasion might require. He procured the key and occupied the room on Saturday and Sunday afternoon and evenings of the 27th and 28th of January, and also probably occupied it Monday evening, the 29th, though this is not entirely clear from the evidence. He was, however, seen to leave the building on that evening. There is a door leading from this room into the adjoining room occupied by Mr. and Mrs. Douglas. In what manner this door was locked or fastened, does not appear; but in any event, there was nothing in common between the people occupying the different rooms, and neither had any occasion to pass through this door, each room having access to the hall of the building through an outer door of its own.

Mr. and Mrs. Douglas discovered the theft on the following Wednesday, January 31. They had been absent from their room since Friday evening, January 26. During this time and for some time thereafter, appellant, his mother, and a younger brother named Howard made their home in an apartment house in the city, their apartment being leased in the name of appellant, who was practically the head of the family. He is 26 years old, and his brother Howard is 17 years old. On February 21, most of the goods were found by

an officer while executing a search warrant in the apartment occupied by appellant, his mother, and brother. The larger part of the goods were found in a closet of the apartment. Some of the smaller things were found in a bureau in the room occupied by Mrs. Hanlon. A pair of shoes and an art bag were produced by appellant from the room occupied by Howard. The two white vests were also produced by appellant. It is not clear from just where he got them. They had previously been sent away and returned with the family laundry. A silver purse was taken from Mrs. Hanlon, or rather given to the officer by her upon demand after she had removed some cards and car tickets therefrom which she claimed belonged to her. All of these articles, save the cards and car tickets, belonged to Mr. and Mrs. Douglas.

While the officer was there, and in the presence of other witnesses, Mrs. Hanlon said to appellant in substance: "Herbert, why did you do it?" evidently referring to the taking of the goods; to which he replied in substance: "Never mind, mother." Appellant, his brother, and mother all knew of the presence of the stolen goods in their apartment for about a week previous to this time, and no report of the fact had been made to the police. Their version of the manner of the goods coming there we will notice later. Appellant was then arrested and taken to police headquarters with the goods. On the way he asked a brother of Mr. Douglas, who had been present at the apartment and was going along with them, if all of the stuff had been found, and asked what was missing. He was informed that a fraternity pin, a gold chain and a scarf pin were missing. He asked about how much they would be worth, and was informed about $75. He then replied to Mr. Douglas: "I will have to make that up, won't I?" He then asked Mr. Douglas if he (Douglas) would speak to his brother and have it kept quiet and suggested that it could be fixed up.

Mrs. Hanlon testified, in substance, that she had told Mr. Douglas, when the search was being made and appellant was

being arrested, that they were taking the wrong man, and appellant also testified that he heard her make this statement. He also testified that he denied to Mr. Douglas that he had stolen the goods. All of this is flatly contradicted by Mr. Douglas and other witnesses present. Appellant also testified, in substance, that he gave the officers at the police headquarters to understand that his mother could tell them who was the person who stole the goods. This is also denied by the state's witnesses.

We think the jury were warranted in believing that appellant made no denial of his stealing of the goods at that time, nor at any time until after Howard's alleged confession, which was made upon the following day, to the prosecuting attorney, that he (Howard) had stolen the goods. On that day, February 22, appellant being still under arrest and detained at police headquarters, Mrs. Hanlon took Howard to Mr. Murphy, the prosecuting attorney, where Howard confessed that he had entered the room of Mr. and Mrs. Douglas, and stolen the goods, and taken them to their apartment. Howard testified in substance, that he was helping his brother at the room adjoining that of Mr. and Mrs. Douglas on Sunday afternoon, the 28th of January, doing some mimeograph work; that his brother went away from the room about an hour before he did, and that soon thereafter he noticed that the door leading into the adjoining room of Mr. and Mrs. Douglas was ajar several inches; that he then pushed the door back and went into the room and took the goods away; that his brother, appellant, had nothing to do with it, and knew nothing of it, until about a week before they were discovered by the officer with the search warrant. According to the testimony of appellant and Mrs. Hanlon, the goods were discovered by them in a closet of Howard's room about February 17; they then attempted to get Howard to explain where the goods came from, but he refused to do so until after appellant was arrested when Howard made the statement to the prosecuting attorney. The only

testimony offered in behalf of appellant was that of himself, his mother, and brother, and while their testimony is fairly consistent as between themselves, there is sharp conflict between their testimony and the state's witnesses upon a great many of the details brought out, especially as to the acts and statements of those present, including appellant, his mother, and brother, at the time the search was being made.

Counsel for appellant places great reliance upon the confession of Howard made to the prosecuting attorney, insisting that reasonable minds cannot differ as to the truth of that confession. We may accept as true that confession in so far as it implicates Howard in the taking of the goods, but it does not follow that the jury were not warranted in believing that appellant was guilty. The guilt of Howard is not at all inconsistent with the guilt of the appellant.

In view of the fact that the goods were stolen by some person or persons from the room of Mr. and Mrs. Douglas on or about January 28; the opportunity of appellant to take the goods at the time the theft was committed; the knowledge of appellant of the presence of the stolen goods in the apartment occupied by himself, mother, and brother, for about one week before they were discovered by the officer and no report having been made of that fact; the finding of the goods in the apartment, some of them at least under circumstances which would warrant the jury in believing they were in the possession of appellant; the acts and statements of appellant at the time of and immediately following the search of the apartment; together with all the circumstances shown; we do not feel warranted in disturbing the verdict of the jury finding appellant guilty. The record discloses that appellant had a fair trial with instructions to the jury quite favorable to him.

The judgment is affirmed.

CROW, C. J., CHADWICK, and MOUNT, JJ., concur.